
CLERK'S OFFICE U.S. DIST. COURT
AT DANVILLE, VA
FILED

MAR 21 2017

JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| DOUGLAS A. HOGLAN, <br>     Plaintiff, | )    Civil Action No. 7:15-cv-00694 <br> ) <br> ) |
| v. | )    **MEMORANDUM OPINION** <br> ) |
| A. DAVID ROBINSON, et al., <br>     Defendants. | )    By:    Hon. Jackson L. Kiser <br> )            Senior United States District Judge |

Plaintiff Douglas A. Hoglan, a Virginia inmate proceeding pro se, filed an amended complaint pursuant to 42 U.S.C. § 1983. Plaintiff names four staff of the Virginia Department of Corrections ("VDOC") as defendants: A. David Robinson, the VDOC's Chief of Corrections Operations; C. Eacho, the former Chair of the VDOC Publications Review Committee ("PRC"); and former PRC members D. Ratliffe-Walker and Birckhead.[1] Presently before me are Plaintiff's and Defendants' various motions, including motions for summary judgment based on qualified immunity.[2] After reviewing the record, I grant Defendants' and deny Plaintiff's motions for summary judgment to award qualified immunity to Defendants in their individual capacities, and I dismiss without prejudice the parties' motions as to Defendants in their official capacities.

I.

Plaintiff pursues four claims in the amended complaint against Robinson, Eacho, Ratliffe-Walker, and Birckhead. First, VDOC Operating Procedure ("OP") 802.1 is overbroad and vague for deeming "modified or altered" publications and other items as contraband.

---

[1] Finding it appropriate to do in so in accordance with defendants' representations and Fed. R. Civ. P. 17(d) and 21, C. Eacho is substituted for defendant PRC Member Number 1.

[2] Plaintiff filed a "motion for adjudication sequence" in which he requests the court to decide certain issues in his preferred order. Plaintiff does not to cite any provision of law as a foundation for the motion. The motion is denied.

Second, OPs 802.1 and 803.2 are unconstitutional, both facially and as applied, because they prohibit sexually explicit communications. Third, OP 803.2 unlawfully allowed the PRC to prohibit Plaintiff's possession of <u>Successful Glamour Photography</u>. Fourth, OP 803.2 violates due process because tbse actual notice of disapproved photographs and publications is too vague to constitute adequate notice. Plaintiff generally alleges that, in relation to the four claims, Defendants:

> a.) [P]articipated directly in the alleged violation, and/or b.) after being informed of the violations through letter, report, complaint, grievance, counsel, or other means failed to remedy the injury, and/or c.) created a policy, procedure, practice, or custom under which unconstitutional acts occurred, or allowed the persistence of said instruments, and/or d.) was grossly negligent in supervising subordinates who participated in committing the wrongful acts, and/or e.) exhibited deliberate indifference or tacit authorization in the violations of rights of the plaintiff and those not before the Court.

(Am. Compl. ¶ 9.) Plaintiff seeks injunctive relief and damages against Defendants in their official and individual capacities for all four claims.

### A.

The first claim is that VDOC Operating Procedure ("OP") 802.1, "Offender Property," is overbroad and vague for deeming as contraband any publication or other item that is "modified or altered." Notably, none of the parties filed a copy of OP 802.1, and consequently, I rely on the amended complaint's description of it.

OP 802.1 defines contraband to include "[s]tate or personal property, regardless of how acquired, that is inoperable or has been <u>modified or altered</u> without written authorization." For example, a full page removed from a publication or a publication with a missing or a cut page is

deemed "modified or altered" and must be discarded as contraband unless the inmate had received written authorization.[3]

Plaintiff generally complains that, during his overall time in the VDOC, staff has confiscated from him loose pages, publications missing parts of pages or full pages, headphone cords repaired with tape, and torn sneakers that were deemed contraband for being "modified or altered." Plaintiff believes the phrase "modified or altered" is too vague, and he is upset that OP 802.1 does not "address the scope of contraband with regards to modified or altered property by linking them to specific penological goals" like other states' correctional agencies.

### B.

The second, third, and fourth claims involve OP 803.2, "Incoming Publications." Plaintiff argues that OP 803.2 violates due process because the actual notice of disapproved photographs and publications is too vague to constitute adequate notice and that OP 803.2 violates the First Amendment because, as of February 18, 2015, it prohibits inmates' receipt of items containing "nudity."

The OP recites:

> In order to maintain security, discipline, and good order in DOC facilities and to assist with rehabilitation and treatment objectives, reduce sexual harassment, and prevent a hostile environment for offenders, staff and volunteers, offenders are not permitted to send, receive or possess material that emphasizes explicit or graphic depictions or descriptions of sexual acts or contains nudity as defined in this operating procedure.

The OP defines "nudity" as "[t]he showing (human or cartoon) of the male or female genitals, pubic area, female breast with less than a fully opaque covering of the areola, or male or female

---

[3] OP 802.1 also permits thirteen books, twelve magazines, one newspaper, and an unlimited number of clippings, photographs, legal documents, and other paper products so long as they all can be stored properly.

3

buttocks with less than a full opaque covering of the anus." The OP exempts "nudity illustrative of medical, educational, or anthropological content[.]"

Staff should not allow an inmate to receive a publication if it can be "reasonably documented" to contain "nudity" or if it violates other criteria. The other criteria include: "emphasizes explicit or graphical depictions or descriptions of sexual acts"[4]; solicits or promotes activity in violation of federal or state law[5]; contains instructions or information that implicates prison security[6]; emphasizes the depiction or promotion of violence, disorder, or criminal activity in violation of federal or state laws or the prison's disciplinary regulations[7]; has content that "could be detrimental" to an inmate's rehabilitation; has gang-related content; is written in code or a language other than English or Spanish unless obtained from an approved vendor; or is larger than eleven inches by fourteen inches.

Materials received at a prison are checked against the PRC's Disapproved Publications List, which is available to inmates and staff. If the material is already on the list, staff sends a Notification of PRC Disapproval Form to the inmate instead of sending the already-disapproved title. The Disapproval Form informs the inmate of the title, the author or issue number, the date of receipt, and a check mark next to the applicable disapproval criteria from OP 803.2. The Disapproval Form for photographs informs the inmate of the sender and a general reason of the

---

[4] Examples include actual sexual intercourse; inanimate object penetration; secretion of bodily fluids or substances in the context of sexual activity or arousal; bondage or violent acts in the context of sexual activity or arousal; any sexual act in violation of federal or state law; and any manipulation of genitalia or buttocks. The OP notes, however, that these examples should not preclude publications "generally recognized as having artistic or literary value" or "describe sexual acts in the context of a story or moral teaching unless the description of such acts is the primary purpose of the publication."

[5] Examples include the abuse or sexual exploitation of children or nude depictions of children in the context of sexual activity.

[6] Examples include escape techniques; maps or directions that pose a security threat; weapons or implements of destruction; toxic, corrosive, or illegal substances; technical details of security or communication devices; staff training manuals; or the ability to physically harm others.

[7] Again, the OP exempts publications "generally recognized as having artistic or literary value" or describes violence "in the context of a story or moral teaching unless the description of such acts is the primary purpose of the publication."

4

violation, such as "nudity." The inmate may appeal a disapproved publication through the Offender Grievance Procedure within seven days of the written notification of the decision.

If the material is not already on the Disapproved Publications List, staff should forward "questionable material" to the three-member PRC.[8] PRC members review materials for compliance with OPs, and their majority vote determines whether something is approved or disapproved.[9] The PRC adds a disapproved publication's title to the Disapproved Publications List if any portion of it contains disapproved content.

Plaintiff complains that the Disapproval Form does not specifically identify the objectionable content, its location, or how the item is prohibited by OP 803.2. Plaintiff believes that OP 803.2 should require staff to show the objectionable material to the inmate for the inmate's inspection if it would not be an "irrevocable threat" to penological goals. Plaintiff explains that would developed more trust in staff if allowed to inspect the disapproved materials.[10]

Plaintiff is upset that the PRC disapproved the book Successful Glamour Photography for depicting "nudity" despite its alleged educational value. Plaintiff explains that the book "provides a technical, academic path to success in professional glamour photography [by] covering . . . cameras and their use, film and digital techniques, lighting, filters, poses, [and] working with models and agencies." Plaintiff says the book "celebrates the beauty of women and is not lewd or derogatory towards them," and that he wants the book to learn how to, inter alia, photograph models as damsels in distress and scream queens. Plaintiff is further upset that he did not receive Successful Glamour Photography even though the Seal of Virginia shows an

---

[8] The only exception is for questionable issues of Prison Legal News, which are sent directly to the Chief of Corrections Operations.
[9] However, the VDOC Director and the Chief of Corrections Operations may veto a PRC decision.
[10] Current policy does not authorize such an inspection.

5

exposed breast, the Bible is available despite its descriptions of sexual activity, and R-rated movies with sexually explicit content are broadcast to inmates. Plaintiff concludes that the VDOC "discriminately, subjectively, and arbitrarily" denied him possession of an item with sexual content.

### III.

Both parties filed motions for full or partial summary judgment, and Defendants argue, inter alia, that they are entitled to qualified immunity in their individual capacities. A practical reason for qualified immunity is the "desire to ensure that insubstantial claims against government officials [will] be resolved prior to discovery."[11] Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). The Supreme Court has "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Id. at 232 (internal quotation marks omitted). Consequently, I adjudicate Defendants' request for qualified immunity before adjudicating the official capacity claims.

### A.

A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); see Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (recognizing a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant). "Material facts" are those facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder

---

[11] The court had already granted a protective order to Defendants based on their assertion of qualified immunity.

could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).

**B.**

Qualified immunity protects government officials from civil damages in a § 1983 action "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); see Jones v. Buchanan, 325 F.3d 520, 531 (4th Cir. 2003) (declaring that the "qualified immunity operates to ensure that before [public officials] are subjected to a suit, officers are on notice their conduct is unlawful." (internal quotes and citations omitted)). Qualified immunity "has no application to suits for declaratory or injunctive relief." South Carolina State Bd. of Dentistry v. F.T.C., 455 F.3d 436, 446-47 (4th Cir. 2002).

Federal courts may consider two questions to resolve qualified immunity. One question is "whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right." Odom v. South Carolina Dep't. of Corr., 349 F.3d 765, 769 (4th Cir. 2003) (internal quotes and citations omitted). The other

7

question is whether, at the time of the claimed violation, the right was "clearly established in the specific context of the case." Id. A "court may address these two questions in the order . . . that will best facilitate the fair and efficient disposition of each case." Estate of Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 898 (4th Cir. 2016).

Qualified immunity shields an official if the alleged violated right was not clearly established at the time of the incident. Jones, 325 F.3d at 526-527. Clearly established means "[t]he unlawfulness of the action must be apparent when assessed from the perspective of an objectively reasonable official charged with knowledge of established law." Lopez v. Robinson, 914 F.2d 486, 489 (4th Cir. 1990). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Anderson v. Creighton, 483 U.S. 635, 640 (1987). A right may be "clearly established" if a "general constitutional rule already identified in the decisional law . . . appl[ies] with obvious clarity to the specific conduct in question, even though the very action in question has [not] previously been held unlawful." United States v. Lanier, 520 U.S. 259, 271 (1997) (citations omitted). Clearly established law for this case refers to decisions of the Supreme Court of the United States, the Court of Appeals for the Fourth Circuit, and the Supreme Court of Virginia. Edwards v. City of Goldsboro, 178 F.3d 231, 251 (4th Cir. 1999).

### C.

Inmates clearly retain protections afforded by the First Amendment, but these rights must be balanced with prisons' institutional needs of security, discipline, and general administration. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). Thus, "a prison regulation that abridges inmates' constitutional rights is 'valid if it is reasonably related to legitimate penological

8

interests.'" Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006) (citing Turner v. Safley, 482 U.S. 78, 84 (1987)). Whether a regulation is reasonably related depends on:

> (1) [W]hether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right ... remain open to prison inmates[]"...; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns.

Id. at 200 (citing Turner, 482 U.S. at 89-92). The prisoner has the burden to disprove the validity of a prison regulation pursuant to the Turner analysis. Overton v. Bazzetta, 539 U.S. 126, 132 (2003).

## IV.

Defendants are entitled to qualified immunity for the first claim about modified or altered property or disallowed sexually-explicit communications under OP 802.1. To state a cause of action under § 1983, a plaintiff must establish that he has been deprived of rights guaranteed by the Constitution and that this deprivation resulted from conduct committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42 (1988). A plaintiff must affirmatively allege that a named defendant was personally involved in the alleged violation of a federal right. See, e.g., Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001) (noting that liability in a civil rights case is "personal, based upon each defendant's own constitutional violations"). Respondeat superior is not a sufficient basis for liability via § 1983. See, e.g., Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

Plaintiff alleges that broken headphones repaired with Scotch tape, sneakers with torn inner lining, and publications with missing pages were confiscated from him as contraband under

9

802.1 because they were deemed modified or altered. Plaintiff also passingly alleges that OP 802.1 is unlawful because it prohibits sexually-explicit communications.

Plaintiff does not establish that any defendant personally confiscated these items or barred Plaintiff's unspecified sexually-explicit communications under OP 802.1. Furthermore, none of the defendants, as a consequence of their administrative roles, had a role in locating or confiscating Plaintiff's property that did not comply with OP 802.1. Moreover, Plaintiff does not describe when or where the property was confiscated and what process, if any, attended the confiscation. Accordingly, Defendants are entitled to qualified immunity in their individual capacities concerning OP 802.1.

## V.

The remaining three claims concern OP 803.2. Specifically, Robinson allegedly violated the First Amendment by authoring OP 803.2 to prohibit sexually explicit communications and violated the Fourteenth Amendment because OP 803.2's notice provision is too vague to constitute legally adequate notice.[12] Also, Eacho, Ratliffe-Walker, and Birckhead allegedly violated the First Amendment by applying OP 803.2 to prohibit Plaintiff's possession of Successful Glamour Photography. I conclude that Defendants are entitled to qualified immunity because their conduct did not violate a clearly established right of which a reasonable person in defendants' positions would have known.

Plaintiff acknowledges that Successful Glamour Photography was disallowed for containing "nudity" as defined in OP 803.2. The keyword in the title of the book is "glamour," which connotes erotic photos of either nude or scantily dressed models. Time and again, courts

---

[12] Plaintiff also invokes the Due Process Clause of the Fifth Amendment, but that clause applies to the federal government, not to the states. See, e.g., Dusenbery v. United States, 534 U.S. 161, 167 (2002) ("The Due Process Clause of the Fifth Amendment prohibits the United States, as the Due Process Clause of the Fourteenth Amendment prohibits the States, from depriving any person of property without "due process of law.").

10

have upheld correctional officials' policies that have barred full frontal nudity in publications arriving at correctional facilities.

> A survey of case law on the issue of prison regulations on sexually themed materials plainly demonstrates that, notwithstanding a private citizen's First Amendment right to possess what can be generally categorized as "adult pornography," prison and jail administrators can constitutionally restrict pornography and similar "sexually explicit" writings and photographs. See, e.g., Bahrampour, 356 F.3d at 976 (upholding as constitutional an Oregon Department of Corrections regulation that prohibited inmates from receiving publications that contained images portraying actual or simulated sexual acts or sexual contact, but that permitted nude images); Jones v. Salt Lake County, 503 F.3d 1147, 1155-56 (10th Cir. 2007) (upholding as constitutional a county jail's ban on "sexually explicit material" that included a ban on photographs of exposed "breasts and genitals" but did not extend to "sexually explicit prose or pictures of clothed women/men"). As to federal prison facilities, the Federal Bureau of Prisons ("BOP") applies a statute passed by Congress in 1996 known as the "Ensign Amendment," which precludes federal prisons from distributing or making available to prisoners "any commercially published information or material that is sexually explicit or features nudity." 28 U.S.C. § 530C(b) (6). "In response to the Ensign Amendment, the BOP promulgated an implementing regulation that narrows the scope of the statute by defining key statutory terms," and interprets the Ensign Amendment as applying only to pictorial representations. Jordan v. Sosa, 654 F.3d 1012, 1016-17 (10th Cir. 2011) (citing 28 C.F.R. § 540.72). Such regulation defines "nudity" as "a pictorial depiction where genitalia or female breasts are exposed," and defines "sexually explicit" as "a pictorial depiction of actual or simulated sexual acts including sexual intercourse, oral sex, or masturbation." 28 C.F.R. § 540.72(b). Additionally, the regulation defines "features," as used in the Ensign Amendment, to mean that the "publication contains depictions of nudity or sexually explicit conduct on a routine or regular basis or promotes itself based upon such depictions in the case of individual one-time issues," and includes an exception for "[p]ublications containing nudity illustrative of medical, educational, or anthropological content." Id.; see Amatel v. Reno, 156 F. 3d 192, 202, 332 U.S. App. D.C. 191 (D.C. Cir. 1998) (finding "that the [Ensign Amendment] and regulation satisfy [Turner v.] Safley's demand for reasonableness, scoring adequately on all four factors"). The currently in force BOP "Program Statement" governing "Incoming Publications" further discusses BOP requirements, noting that a warden must consider each publication on an issue-by-issue basis before it is rejected, and provides examples of publications that are generally allowed, such as: (1) National Geographic, even if it contains nudity; and (2) "Sports Illustrated swimsuit issues" and "Lingerie catalogs," unless they contain nudity. BOP Program Statement 5266.11, Nov. 9, 2011, available at http://www.bop.gov/policy/progstat/5266_011.pdf.

11

Prison Legal News v. Stolle, No. 2:13cv424, 2015 U.S. Dist. LEXIS 43228, at *13-15, 2015 WL 1487190, at *5 (E.D. Va. Mar. 31, 2015) (footnotes omitted and alterations in original).

In 1989, the Supreme Court held that the Turner's reasonableness standard must be applied to correctional officials' regulations of publications. Thornburgh v. Abbott, 490 U.S. 401, 413 (1989). In Thornburgh, the Supreme Court affirmed federal regulations that allowed federal prisoners to subscribe to publications, but the Court also allowed prison authorities to reject publications deemed harmful to security, order, or discipline. Id. at 404. The regulations also provided procedural protections, including notice and independent review.

Here, Robinson enacted OP 803.2 to allow state prisoners to receive publications but yet to ensure publications do not harm security, order, or discipline. Furthermore, Robinson enacted OP 803.2 with the requirement that an inmate receive notice of a disapproved publication and appeal to an independent decision maker. Similarly, Eacho, Ratliffe-Walker, and Birckhead determined that Successful Glamour Photography contained nudity, a fact which is not in dispute, sufficient to be deemed harmful to security, order, or discipline. It would not be apparent to an objectively reasonable official charged with knowledge of established law that such conduct would be apparently unlawful.

Although Plaintiff passingly alleges Defendants' "deliberate indifference or tacit authorization" of alleged constitutional deprivations, he does not establish that a defendant had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury. Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (emphasis added). To the extent Plaintiff seeks to impose personal liability on Defendants for negligence, respondeat superior, or responding to grievances, he cannot succeed here. See, e.g., Parratt v. Taylor, 451 U.S. 527, 538-39 (1981), overruled in irrelevant part by

12

Daniels v. Williams, 474 U.S. 327, 330-31 (1986); Monell, 436 U.S. at 663 n.7; Estelle v. Gamble, 429 U.S. 97, 104 (1976); DePaola v. Ray, No. 7:12cv00139, 2013 U.S. Dist. LEXIS 117182, at *23, 2013 WL 4451236, at *8 (W.D. Va. July 22, 2013) (Sargent, M.J.) (citing Brooks v. Beard, 167 F. App'x 923, 925 (3rd Cir. 2006)).

In conclusion, Defendants did not transgress bright lines with OP 803.2, and officials are not liable for "bad guesses in gray areas," even if Defendants' decisions could be deemed as such. See, e.g., Maciariello v. Sumner, 973 F.2d 295, 298 (4th Cir. 1992). Accordingly, Defendants are entitled to qualified immunity in their individual capacities concerning OP 803.2.

## VI.

Plaintiff has filed a motion to strike and for preservation. This motion concerns the suspension, creation, or implementation of a sex-offender treatment plan. First, Plaintiff asks the court to strike any mention by defendants of him being subjected to a treatment plan. Plaintiff argues that no treatment plan was in effect when he commenced this action and that he would be prejudiced because there is a genuine dispute as to the validity of the treatment plan imposed after this action commenced. Second, Plaintiff asks the court to order defendants to preserve any and all records about the new treatment plan implemented on April 14, 2016, because Plaintiff expects to file a lawsuit to challenge the treatment plan as retaliation for filing this action. However, the suspension, creation, or implementation of a treatment plan is not a claim in this action. Furthermore, Plaintiff's own arguments recognize that records about the treatment plan are not proportional to the needs of this case. Moreover, the court had already held on October 14, 2016, that unrelated inquiries about the suspension, creation, or implementation of a treatment plan would "derail this litigation" and "would cause undue delay and prejudice the rights of most defendants to this action[.]" Consequently, Plaintiff is not entitled to records

13

about the suspension, creation, or implementation of a treatment plan in this action, especially in light of the protective order already granted to Defendants based on their assertion of qualified immunity. Accordingly, the motion to strike and for preservation is denied.

## VII.

For the foregoing reasons, Defendants' motion for summary judgment is granted in part, and Plaintiff's motion for summary judgment is denied in part, as to qualified immunity. The parties' motions for summary judgment as to official capacity claims are dismissed without prejudice, and the protective order is lifted. C. Eacho is substituted for defendant PRC Member Number 1, and Plaintiff's motion for adjudication sequence and motion to strike and for preservation are **DENIED**. This matter is referred to mediation. While the parties should communicate in good faith about discovery, the court will not entertain motions about discovery until the mediation concludes.

ENTER: This 21st day of March, 2017.

*/s/ Jackson L. Kiser*
Senior United States District Judge