**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **DOUGLAS A. HOGLAN,** | ) | Civil Action No. 7:15-cv-00694 |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **MEMORANDUM OPINION** |
| | ) | |
| **A. DAVID ROBINSON, et al.,** | ) | **By:  Hon. Jackson L. Kiser** |
| **Defendants.** | ) | **Senior United States District Judge** |

Plaintiff Douglas A. Hoglan, a Virginia inmate proceeding pro se, filed an amended

complaint pursuant to 42 U.S.C. § 1983.  Plaintiff names four staff of the Virginia Department of

Corrections ("VDOC") as defendants: A. David Robinson, the VDOC's Chief of Corrections

Operations; C. Eacho, the former Chair of the VDOC Publications Review Committee ("PRC");

and former PRC members D. Ratliffe-Walker and Birckhead.  I had granted Defendants' and

denied Plaintiff's motions for summary judgment as to award qualified immunity to Defendants

in their individual capacities.  Presently before me is Defendants' second motion for summary

judgment as to their official capacities, to which Plaintiff responded.  Thereafter, the parties

conducted additional discovery pursuant to my Order entered on November 15, 2017.  After

reviewing the record, I grant Defendants' motion for summary judgment.

## I.
### A.

Plaintiff pursues four claims in the amended complaint.[1]  First, VDOC Operating

Procedure ("OP") 802.1 and OP 803.2 is facially overbroad and vague for deeming "modified or

altered" items and publications as contraband, in violation the First and Fourteenth Amendment

---

[1] Although Plaintiff describes the claims in his response to the motion for summary judgment, he
cannot use that response to amend or correct the amended complaint.  Cloaninger v. McDevitt, 555 F.3d
324, 336 (4th Cir. 2009).

rights of Plaintiff and "those not before the court."[2] (Am. Compl. ¶ 39.) Second, OP 803.2 is facially unconstitutional because it prohibits certain sexually explicit communications, in violation of the First Amendment rights of Plaintiff and "those not before the court."[3] (Id. ¶ 41.) Third, the PRC's application of OP 803.2 to prohibit Plaintiff's possession of <u>Successful Glamour Photography</u> violated the First Amendment. (Id. ¶ 42.) Fourth, OP 803.2 is facially unconstitutional because the notice of disapproved photographs and publications is too vague to constitute adequate notice, in violation of the Fourteenth Amendment. (Id. ¶ 40.)

## B.

Tangential to these claims is the fact, as Plaintiff recognizes in his filings for this case, that he is imprisoned for sexual crimes. In January 2009, Plaintiff was imprisoned after he pleaded guilty to two counts of adulterate drink to injure, two counts of adulterate food, three counts of aggravated sexual battery, one count of unlawful filming/photography, and two counts of possession of child pornography.[4] Commonwealth v. Hoglan, No. CR08000102, CR08000417, CR07000982, CR07001101 (Circuit Ct. Stafford Cnty.) (available via Virginia Circuit Court Case Information, http://ewsocis1.courts.state.va.us /CJISWeb/circuit.jsp); see, e.g., Fed. R. Evid. R. 201(b)(2); In Re Katrina Canal Breaches Consol. Litig., 533 F. Supp. 2d 615, 631-33 & nn.14-15 (E.D. La. 2008); Williams v. Long, 585 F. Supp. 2d 679, 686-88 & n.4

---

[2] Plaintiff also cites to the Fifth Amendment when alleging a due process violation under the Fourteenth Amendment. Defendants, who are agents of Virginia and not the United States, are entitled to summary judgment as to a due process claim under the Fifth Amendment. See, e.g., Dusenbery v. United States, 534 U.S. 161, 167 (2002); Ambrose v. City of New York, 623 F. Supp. 2d 454, 466-67 (S.D.N.Y. 2009).

[3] Plaintiff cites also to OP 803.1, "Offender Correspondence," and 802.1, "Offender Property," but his First Amendment content challenges to these OPs are limited to their incorporation of 803.2 criteria for disapproval. Accordingly, the question as to OP 803.2 is determinative as to other affected OPs, which Plaintiff refers to as "tethered others," for the First Amendment content claims.

[4] The state court's online criminal records reveal that numerous counts of possession of child pornography, delivery of adulterated food, aggravated sexual battery, and attempted rape were nolle prossed after he pleaded guilty.

(D. Md. 2008). Plaintiff explains, "In 2007, . . . [P]laintiff spiked a twenty-year old female's drink with a prescription sleep aide, and as she slept he moved aside her clothes and took photos of her private areas. . . . [Plaintiff] also installed a spy camera in the bathroom of the victim that he used to film her undressing. . . ."[5] (Am. Compl. ¶ 14.) Also, child pornography was found on his computer. (Id. ¶ 16.) Consequently, Plaintiff will have to register as a violent sex offender when released from imprisonment, which is likely to be within ten years.

Also tangential to these claims is the fact that the VDOC has enacted "treatment plans" for Plaintiff during various periods of his incarceration.

> In December 2011, . . . the Senior Psychologist at [a VDOC prison] created a Case Plan Agreement . . . that, inter alia, prohibited Plaintiff from viewing or possessing any publications, materials, or photos which may be detrimental to the treatment plan or that may promote deviant behaviors including sexually deviant behaviors. . . . Plaintiff's continued attempts to receive pornographic photos, flyers, pamphlets, and books allegedly prompted [prison] staff to retaliate by searching his cell, seizing images of children and women, and convicting Plaintiff of various institutional infractions for violating the terms of the treatment plan.

Hoglan v. Robinson, Civil Action No. 7:13-cv-00258, 2014 U.S. Dist. LEXIS 131975, at *2, 2014 WL 4680704, at *1 (W.D. Va. Sep. 19, 2014) (internal quotation marks omitted). This provision was removed from the treatment plan after he was transferred to Green Rock

---

[5] Plaintiff does not identify a second contemporaneous victim, who was reported to be the mother of the first victim. Keith Epps, *20 Years Given in Sexual Offenses*, THE FREE LANCE-STAR, Jan. 31, 2009, at A1, digital version available at http://www.fredericksburg.com/local/years-given-in-sexual-offenses/article_3d88a74a-2445-5192-8610-a383b7aa4dfc.html (last accessed Mar. 28, 2018) (attached as Ex. A); see Fed. R. Evid. 201(b)(2) (allowing judicial notice of a fact not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned); see also JUDICIAL CONFERENCE OF THE UNITED STATES, REPORT OF THE PROCEEDINGS (Mar. 2009) (recommending preservation of references cited in an opinion that is available on the Internet); cf. Commonwealth v. Hoglan, No. CR08000102, CR08000417, CR07000982, CR07001101 (Circuit Ct. Stafford Cnty.).

Correctional Center, but prison staff renewed the provision during this action in April 2016.[6]

(ECF No. 60 at 3.)

### III.

### A.

A party is entitled to summary judgment if the pleadings, the disclosed materials on file, and any affidavits show that there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a); see Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991) (recognizing a party is entitled to summary judgment if the record as a whole could not lead a rational trier of fact to find in favor of the non-movant). "Material facts" are those facts necessary to establish the elements of a party's cause of action. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists if, in viewing the record and all reasonable inferences drawn therefrom in a light most favorable to the non-moving party, a reasonable fact-finder could return a verdict for the non-movant. Id. The moving party has the burden of showing – "that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the movant satisfies this burden, then the non-movant must set forth specific facts that demonstrate the existence of a genuine dispute of fact for trial. Id. at 322-24. A court may not resolve disputed facts, weigh the evidence, or make determinations of credibility. Russell v. Microdyne Corp., 65 F.3d 1229, 1239 (4th Cir. 1995); Sosebee v. Murphy, 797 F.2d 179, 182 (4th Cir. 1986). Instead, a court accepts as true the evidence of the non-moving party and resolves all internal conflicts and inferences in the non-moving party's favor. Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).

---

[6] Plaintiff had sought to litigate claims about the renewed treatment plan, but I denied the request because it would have derailed this case.

**B.**

In response to the motion for summary judgment, Plaintiff invokes Fed. R. Civ. P. 56(d), seeking to postpone a ruling on summary judgment until more discovery can be required. I deny his request to postpone the adjudication of Defendants' motion.

Rule 56(d) requires a district court to defer ruling on a motion for summary judgment if the opposing party "shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d). This rule "mandates that summary judgment be [postponed] when the nonmovant 'has not had the opportunity to discover information that is essential to his opposition.'" Pisano v. Strach, 743 F.3d 927, 931 (4th Cir. 2014) (quoting Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006)). A district court may deny a Rule 56(d) motion "when the information sought would not by itself create a genuine issue of material fact sufficient for the nonmovant to survive summary judgment." Id.

Plaintiff has had a reasonable opportunity to seek discovery in opposition. In August 2016, Plaintiff sent, and Defendants responded to, two separate sets of interrogatories and requests for production of documents. After qualified immunity was adjudicated in March 2017, the parties could conduct discovery. Indeed, the docket reflects that Plaintiff filed a third request for production of documents in May 2017, and Defendants responded in June 2017. Plaintiff filed another request for production of documents in August 2017, and Defendants responded in September 2017.

In support of his Rule 56(d) request, Plaintiff believes that certain discovery is necessary. The requests include a motion to compel depositions; the return of his pictures depicting nude females, some of which were seized in April 2017 as "modified or altered" contraband; and the

complete Disapproved Publications List. The requests also seek all communications between the VDOC and a corporate photo vendor that supposedly stopped doing business with VDOC inmates; all VDOC records involving all approvals or disapprovals of all incoming publication in all VDOC facilities since January 2011; names and duties for all members of the "VDOC Policy and Initiative Unit" since January 2011; all "VDOC 'Work Description and Performance Plans' for the positions that typically are charged with reviewing publications and inmate property for compliance with VDOC's OP 803.2's 'Specific Criteria for Publication'"; all "officially filed" reports about staff complaining about having to review incoming publications; and a "composite and comparative report of the number of sexual harassment complaints" VDOC staff filed since January 2013.

After Plaintiff made the Rule 56(d) request, I granted in part and denied in part Plaintiff's motion to compel. I ordered Defendants to give Plaintiff the requested Disapproved Publications List and to give me the pictures for in camera review. I denied the motion to compel oral depositions as unduly burdensome in the context of prison administration because Plaintiff had the option to pursue written depositions under Rule 31. See, e.g., McKeithan v. Jones, 212 F. App'x 129, 131 n.3 (3d Cir. 2007) (denying the unorthodox request for an inmate to depose correctional officials without the means to execute the depositions). The obvious logistical, security, and legal concerns inherent in Plaintiff's proposal militated against oral depositions and supported using written depositions.

In his motion for reconsideration of that denial in part, Plaintiff argues that, inter alia, he finds it too inconvenient to pursue written questions. Although given the opportunity to depose via Rule 31, Plaintiff ostensibly has not pursued that opportunity and has not sought additional time to do so. Also, Plaintiff's Rule 56(d) declaration does not identify any specific information

not already provided that would create a genuine dispute of material fact. Instead, Plaintiff generally describes the potential benefits of a deposition. Thus, Plaintiff's desire for various "all VDOC" records amounts to a hope of finding something but does not point to information that by itself creates a genuine issue of material fact. In sum, Plaintiff has had a reasonable opportunity to seek discovery, albeit not in his preferred way brought about by his own incarceration, and his motion for reconsideration and Rule 56(d) request are denied.

## IV.

Plaintiff presents facial challenges to OP 802.1 and 803.2 and an as-applied challenge to OP 803.2. "A facial challenge considers the restriction's application to all conceivable parties, while an as-applied challenge tests the application of that restriction to the facts of a plaintiff's concrete case." Colo. Right to Life Comm., Inc. v. Coffman, 498 F.3d 1137, 1146 (10th Cir. 2007). There are three ways in which a plaintiff may facially challenge a regulation under the First Amendment. A plaintiff can demonstrate that: no set of circumstances exists under which the regulation would be valid; the regulation lacks any plainly legitimate sweep; or the regulation is "overbroad" because a substantial number of its applications are unconstitutional, when judged in relation to the statute's plainly legitimate sweep. United States v. Stevens, 559 U.S. 460, 472-73 (2010).

Plaintiff argues that 802.1 and 803.2 are facially overbroad. Whether a regulation is overbroad depends on its application "to real-world conduct, not fanciful hypotheticals." Id. at 485 (Alito, J., dissenting). "[A]n overbreadth claimant bears the burden of demonstrating, from the text of [the regulation] and from actual fact, that substantial overbreadth exists." Id. Similarly, "there must be a realistic danger that the [regulation] itself will significantly compromise recognized First Amendment protections of parties not before the Court for it to be

facially challenged on overbreadth grounds." Id. Courts should "not apply the strong medicine of overbreadth analysis where the parties fail to describe the instances of arguable overbreadth of the contested law." Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 449, n.6 (2008) (internal quotation marks omitted).

**V.**
**A.**

In April 2015, Robinson began enforcing OP803.2's prohibition on certain sexually-explicit materials. Inmates were no longer permitted to send, receive, or possess certain material that emphasized explicit or graphic depictions or descriptions of sexual acts or contained "nudity" as defined in the OP. This change was intended to aid rehabilitation, especially for sex offenders like Plaintiff; reduce sexual harassment; and prevent a hostile environment for staff, volunteers, and inmates. Not surprisingly, Plaintiff and other sex offenders disproportionally solicit sexually explicit materials versus the rest of the VDOC's inmates. Robinson determined that, as a practical aspect of prison life, a partial ban only as to sex offenders, on paper, could not, in reality, actually prevent sex offenders, like Plaintiff, from possessing certain sexually explicit materials while these materials remain in a prison. Robinson avers that such a strategy can lead to fighting, stealing, assaults, gambling, and other disruptive behaviors that threaten institutional security. Also, sex offenders, like Plaintiff, are not allowed to possess any sexually explicit materials when under post-release supervision. Thus, the VDOC determined it was incongruent to allow incarcerated sex offenders to possess certain sexually explicit materials that they cannot possess after release and under supervision.

The OP defines "nudity" as "[t]he showing (human or cartoon) of the male or female genitals, pubic area, female breast with less than a fully opaque covering of the areola, or male or

female buttocks with less than a full opaque covering of the anus." The OP exempts "nudity illustrative of medical, educational, or anthropological content[.]"

Per the OP, staff should "disapprove" and not allow an inmate to receive a publication if it can be "reasonably documented" to contain "nudity" or if it violates other criteria described in OP 803.2. The other criteria include: "emphasizes explicit or graphical depictions or descriptions of sexual acts"[7]; solicits or promotes activity in violation of federal or state law[8]; contains instructions or information that implicates prison security[9]; emphasizes the depiction or promotion of violence, disorder, or criminal activity in violation of federal or state laws or the prison's disciplinary regulations; has content that "could be detrimental" to an inmate's rehabilitation; has gang-related content; is written in code or a language other than English or Spanish unless obtained from an approved vendor; or is larger than eleven inches by fourteen inches. Notably, however, the OP notes that these criteria should not preclude material that are "generally recognized as having artistic or literary value" or "describe sexual acts in the context of a story or moral teaching unless the description of such acts is the primary purpose of the publication."

Plaintiff is upset that the PRC disapproved Successful Glamour Photography for depicting "nudity" despite its alleged educational value. Plaintiff explains that the book "provides a technical, academic path to success in professional glamour photography [by] covering . . . cameras and their use, film and digital techniques, lighting, filters, poses, [and]

---

[7] Examples include actual sexual intercourse; inanimate object penetration; secretion of bodily fluids or substances in the context of sexual activity or arousal; bondage or violent acts in the context of sexual activity or arousal; any sexual act in violation of federal or state law; and any manipulation of genitalia or buttocks.

[8] Examples include the abuse or sexual exploitation of children or nude depictions of children in the context of sexual activity.

[9] Examples include escape techniques; maps or directions that pose a security threat; weapons or implements of destruction; toxic, corrosive, or illegal substances; technical details of security or communication devices; staff training manuals; or the ability to physically harm others.

working with models and agencies." Plaintiff says the book "celebrates the beauty of women and is not lewd or derogatory towards them," and that he wants the book to learn how to, inter alia, photograph models as damsels in distress and scream queens for his illustrations.[10] Plaintiff is further upset that he did not receive Successful Glamour Photography even though the Seal of Virginia shows an exposed breast, the Bible is available despite its descriptions of sexual activity, and R-rated movies with sexually explicit scenes are broadcast to inmates. Plaintiff concludes that the VDOC "discriminately, subjectively, and arbitrarily" denied him possession of an item with sexual content.

### B.

Inmates retain protections afforded by the First Amendment, but these rights must be balanced with prisons' institutional needs of security, discipline, and general administration. O'Lone v. Estate of Shabazz, 482 U.S. 342, 349 (1987). Thus, "a prison regulation that abridges inmates' constitutional rights is 'valid if it is reasonably related to legitimate penological interests.'" Lovelace v. Lee, 472 F.3d 174, 199 (4th Cir. 2006) (citing Turner v. Safley, 482 U.S. 78, 84 (1987)). Whether a regulation is reasonably related depends on:

> (1) [W]hether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right … remain open to prison inmates[]". . . ; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is [instead] an exaggerated response to prison concerns.

Id. at 200 (citing Turner, 482 U.S. at 89-92); see Bahrampour v. Lampert, 356 F.3d 969, 975 (9th Cir. 2004) (recognizing Turner applies equally to facial and as-applied challenges).

---

[10] It is noteworthy to mention again that Plaintiff is imprisoned for unlawfully photographing a "damsel in distress" after he drugged his victim and undressed her although the record is not clear whether his victim was a "scream queen" at some point during his aggravated sexual battery.

The prisoner has the burden to disprove the validity of a prison regulation pursuant to the Turner analysis. Overton v. Bazzetta, 539 U.S. 126, 132 (2003). Nonetheless, "prison officials must still articulate their legitimate governmental interest in the regulation." Van den Bosch v. Raemisch, 658 F.3d 778, 786 (7th Cir. 2011). Courts have been instructed to give deference to state prison officials regarding day-to-day prison operations. See, e.g., Turner, 482 U.S. at 84-85 (citing Procunier v. Martinez, 416 U.S. 396, 404-05 (1974)). This deference is due because "courts are ill equipped to deal with the increasingly urgent problems of prison administration." Procunier, 416 U.S. at 405; see Meachum v. Fano, 427 U.S. 215, 229 (1976) ("The federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the States.").

## C.

Plaintiff asserts that OP 803.2 is unlawful because, on its face, it prohibits certain sexually explicit communications, and as applied, it allowed the PRC to prohibit Plaintiff's possession of Successful Glamour Photography. I find that Plaintiff fails to carry his burden to show the wording of OP 803.2 or the PRC's disapproval of Successful Glamour Photography, either as applied or as the particular, non-hypothetical example, violates a First Amendment right afforded to Plaintiff or other prisoners.

Defendants establish legitimate penological interests in support of the criterion of OP 803.2. Defendants assert that the regulation was promulgated as a result of the VDOC's duty to maintain security, discipline, and good order in its correctional facilities, to rehabilitate inmates, and to reduce sexual harassment of staff. See Casey v. Lewis, 4 F.3d 1516, 1521 (9th Cir. 1993) ("[A] prison superintendent's affidavit, which stated that certain regulated material, if not censored, 'could lead to violence . . . ,' constituted a sufficient showing of a threat to prison

11

security. We require[] no proof that such materials ever had been the cause of violence." (internal citations omitted)). "[T]here is no doubt that protecting the safety of guards in general is a legitimate interest, and that reducing sexual harassment in particular likewise is legitimate." Mauro, 188 F.3d at 1059. Likewise, the "legitimacy of the rehabilitative purpose appears indisputable." Amatel v. Reno, 156 F.3d 192, 196, 332 U.S. App. D.C. 191 (D.C. Cir. 1998).

Robinson, in promulgating the regulation, could rationally believe there is a reasonable relationship between certain sexually explicit and nude images prohibited by the criteria and mitigating the impacts to rehabilitation, female staff, and security. See, e.g., id. at 199 ("We think that the government could rationally have seen a connection between pornography and rehabilitative values. . . . We do not think . . . that common sense must be the mere handmaiden of social science data or expert testimonials. . . ."); see also King v. Dooley, Civil Action No. 00-4052, 2003 U.S. Dist. LEXIS 29085, at *12 (D.S.D. June 16, 2003) ("Defendants explained that the bartering of pornographic materials, even among those prohibited from possessing pornography, has been a problem in the past. Disputes arose about the use or return of pornographic materials. These disputes resulted in threats against other inmates."). It is understandable that prison staff would feel exposed to a hostile work environment or at least feel "extremely uncomfortable" by constantly being inundated with the pornographic images.[11] See E.E.O.C. v. Central Wholesalers, Inc., 573 F. 3d 167 (4th Cir. 2009) (finding that complaints about a coworker watching pornography, utilizing a pornographic screensaver, and having

---

[11] A sample of Plaintiff's requests for prurient materials can be seen at Exhibit E (ECF No. 8, attch. 4) to the original complaint filed in Hoglan v. Robinson, Civil Action No. 7:13-cv-00258. See, e.g., Fed. R. Evid. 201(b); Zakinov v. Blue Buffalo Pet Prods., No. 17-cv-01301-AJB-WVG, 2018 U.S. Dist. LEXIS 47725, at *8-9, 2018 WL 1426932, at *3 (S.D. Cal. Mar. 22, 2018) ("[I]t is undeniable that this Court may take judicial notice of its own records in other cases . . . ." (internal quotation marks omitted)). Also, samples of explicit hand-drawn illustrations confiscated from him depict nude children, sodomy, group sex, animate and inanimate object sexual penetration, and the lewd exhibition of genitals. Hoglan, No. 7:13-cv-00258, supra, at ECF No. 47-7, p. 13, No. 47-8, pp. 20-25, No. 47-9, pp. 1-15. These materials are analogous to the crimes he committed more than ten years ago.

pornographic materials in his cubicle created triable issue of fact on severity or pervasive nature of offensive conduct); Harris v. L & L Wings, Inc., 132 F.3d 978, 981-82 (4th Cir. 1997) (finding that pornography, including "posters of scantily clad women," "contributed to the sexually hostile environment"); Baskerville v. Culligan Int'l Co., 50 F.3d 428, 430 (7th Cir. 1995) (noting that actionable sexual harassment may include exposure to pornographic pictures); Greene v. A. Duie Pyle, Inc., 371 F. Supp. 2d 759, 763 (D. Md. 2005) (finding that presence of pornography in a work place can support a claim of hostile work environment).

The challenged regulation also is "content-neutral" because it furthers important, substantial governmental interests not related to suppressing expression. See Thornburgh, 490 U.S. at 415-16. OP 803.2 provides a very specific and objective definition of "nudity" to promote legitimate penological interests without unduly suppressing sexually-charged content. Access to sexual content includes publications containing "nudity" illustrative of medical, educational, or anthropological content. Also, otherwise prohibited material is allowed if, in the reasonable discretion of prison officials, the material is primarily "in the context of a story or moral teaching." This exception is even broader for material "generally recognized as having artistic or literary value." See Couch v. Jabe, 737 F. Supp. 2d 561, 567-72 (W.D. Va. 2010) (describing numerous literary works that would otherwise be prohibited absent a literary exception).

Plaintiff's interpretation of "alternatives" is too narrow. Plaintiff essentially argues that, because he cannot see an uncovered anus, he has no alternative means to see anuses. The Supreme Court did not define an inmate's right as narrowly as Plaintiff would like; any regulation would be suspect "if the 'right' at stake is defined in terms of the materials excluded by the ban." Amatel, 156 F.3d at 201. Instead, "[t]he regulations at issue … permit a broad

range of [other] publications to be … received, and read, [and thus] this factor is clearly satisfied." <u>Thornburgh</u>, 490 U.S. at 418.

OP 803.2 does not ban all graphic depictions of "nudity" as there are alternative means by which Plaintiff or any other inmate may view sexually descriptive material. Indeed, Plaintiff acknowledges he may see a bare breast on the Seal of Virginia, see fleeting movie scenes of sexual content, and read written descriptions of sexual content in the Holy Bible and other books.[12] Accordingly, Plaintiff may still access sexual content that does not threaten institutional security, degrade staff's working environment, or compromise inmate safety or rehabilitation.

Plaintiff fails to fully describe a valid alternative. "[I]f an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at <u>de minimis</u> cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard." <u>Turner</u>, 482 U.S. at 90-91. This is not a "least restrictive alternative test," and the burden is on the prisoner challenging the regulation to show that there are obvious, easy alternatives to the regulation. <u>O'Lone</u>, 482 U.S at 350; <u>see also</u> <u>Casey</u>, 4 F.3d at 1523 ("It is incumbent upon the prisoners to point to an alternative that accommodates their rights at <u>de minimis</u> cost to security interests.") (emphasis in original). The absence of a ready alternative is evidence of the reasonableness of a prison regulation. <u>Turner</u>, 482 U.S. at 90-91.

Furthermore, Plaintiff fails his burden to illustrate an alternative regulatory scheme. Instead, he merely provides citations to various cases or laws that address sexual materials. (Am. Compl. ¶ 38; Mem. Supp. Am. Compl. 27-29.) It is not a court's burden to construct alternatives on a <u>pro se</u> plaintiff's behalf. <u>See, e.g.</u>, <u>Gordon</u>, 574 F.2d at 1151. Regardless, Plaintiff does not adequately address all of the VDOC's rationales, including the potential harassment of staff

---

[12] Ostensibly, Plaintiff has found these examples to be sexual material since he uses these allegedly risque items as examples why the policy is arbitrary.

and the rehabilitation of sexual offenders, like Plaintiff, who are not allowed to possess such

materials while on supervised release.  See Friend v. Kolodzieczak, 923 F.2d 126, 128 (9th Cir.

1991) (holding that an inmate's proposed alternative was inadequate where it satisfied some, but

not all, of the prison officials' concerns).  If there was no such regulation, staff would likely have

to conduct:

> [A] detailed prisoner-by-prisoner (and presumably publication-by-
> publication) sifting to determine whether a particular publication will harm
> the rehabilitation of a particular prisoner.  The costs of this approach seem
> far from de minimis.  Apart from the purely administrative burden of such a
> process, the exercise of such broad discretion seems highly conducive to just
> the sort of conflicting decisions that give bite to vagueness concerns.  And
> the reality is that prisoners are likely to pass pornographic materials about,
> so that prisoner-by-prisoner determinations may run aground on the "ripple
> effect" . . . . Even if pornography could be directed only to those not likely
> to be adversely affected, it could find its way to others, interfering with their
> rehabilitation and increasing threats to safety.

Amatel, 156 F.3d at 201.

My review finds that OP 803.2 is not an exaggerated response to existing concerns, is not

vague, and is not overbroad.  Plaintiff has not demonstrated that the regulation is "overbroad"

because a substantial number of its applications are unconstitutional in relation to the statute's

plainly legitimate sweep, nor demonstrated a realistic danger that OP 803.2's prohibitions will

significantly compromise recognized First Amendment protections of parties not before the

court.  When comparing Plaintiff's crimes and his conduct while imprisoned thus far, he is the

exemplary candidate to demonstrate the penological need for these restrictions.

Defendants have drawn reasonable contours to balance legitimate penological goals and

inmates' First Amendment rights.  The OPs descriptions of prohibited items sufficiently notifies

a person of ordinary intelligence as to what material is forbidden.  See, e.g., Grayned v. City of

Rockford, 408 U.S. 104, 108 (1972).  The "nudity" definition narrowly defined as the most

private areas of the body: the anus, genitals, pubic area, and areola, and it is not disputed that <u>Successful Glamour Photography</u> depicted "nudity."[13]   Indeed, "even under conventional overbreadth doctrine outside of prison, overbreadth claims by those on the margins of pornography have fared poorly."   <u>Amatel</u>, 156 F.3d at 202 (citing <u>Young v. American Mini Theatres, Inc.</u>, 427 U.S. 50, 61 (1976) ("Since there is surely a less vital interest in the uninhibited exhibition of material that is on the borderline between pornography and artistic expression than in the free dissemination of ideas of social and political significance … we think this is an inappropriate case in which to adjudicate the hypothetical claims of persons not before the Court.")).   Despite Plaintiff's conclusory accusations to the contrary, OP 803.2 allows materials consisting of words or images that depict what Plaintiff calls "sexually explicit communications."   Accordingly, Defendants' motion for summary judgment is granted in part as to claims two and three.

## VI.

Defendants are entitled to summary judgment for the claim about "modified or altered" property being deemed contraband.   The first claim is that VDOC Operating Procedure ("OP") 802.1, "Offender Property," is overbroad and vague for deeming as contraband any item or publication that is "modified or altered."   OP 802.1 includes in its definition of contraband "[s]tate or personal property, regardless of how acquired, that is inoperable or has been <u>modified or altered</u> without written authorization."   For example, a full page removed from a publication or a publication with a missing page is deemed "modified or altered" and must be discarded as contraband unless the inmate had received written authorization.   Also included in the definition

---

[13] Consequently, there was "some evidence" supporting the conclusion that <u>Successful Glamour Photography</u> violated the "nudity" prohibition.  <u>See, e.g.</u>, <u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 454 (1985) (discussing evidentiary standard for prison administrative action infringing on liberty interest).  Plaintiff has not supplied a copy of the book.

of contraband is "[p]roperty of any type (including . . . pictures or written material of any type) regardless of how acquired that violates the criteria that govern offender incoming publications[.]"

Plaintiff generally complains that, during his overall time in the VDOC, staff has confiscated from him loose pages and publications missing parts of pages or full pages that were deemed contraband for being "modified or altered."[14]  Plaintiff believes the phrase "modified or altered" is too vague, and he is upset that OP 802.1 does not "address the scope of contraband with regards to modified or altered property by linking them to specific penological goals" like other states' correctional agencies.

Upon review, and considering the Turner factors, the regulation passes muster both on its face and as applied to Plaintiff.  "Prison discipline and prison security are important and substantial governmental interests, and wide latitude should be allowed to prison officials in the making of regulations to preserve them."  McMilan v. Carson, 369 F. Supp. 1182, 1187 (D. Mass. 1973), aff'd 493 F.2d 1217 (1st Cir. 1974).  "In examining claims of constitutional violations in the prison context, courts generally need only determine whether the challenged prison practice or regulation is reasonably related to a legitimate penological goal, or whether it is an 'exaggerated response' to security concerns."  Duamutef v. Leonardo, No. 91-cv-1100, 1993 WL 428509, at *2 (N.D.N.Y. Oct. 22, 1993), report and recommendation adopted, No. 91-cv-1100, 1994 WL 86700 (N.D.N.Y. Mar. 7, 1994) (citing Turner, 482 U.S. at 87; Pell v. Procunier, 417 U.S. 817, 827 (1974)).

---

[14] Plaintiff also complains about the confiscation of headphone cords repaired with tape and torn sneakers.  Plaintiff fails to establish that the deprivation of these goods implicates the First Amendment, and I decline to extrapolate a claim on his behalf.  See, e.g., Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) (recognizing that a district court is not expected to assume the role of advocate for a pro se plaintiff).   In any event, Plaintiff had the Virginia Tort Claims Act as an available remedy.  See, e.g., Va. Code § 8.01-195.3; see also Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985).

Turning to the <u>Turner</u> factors, there is a "valid, rational connection" between the ban on contraband (as defined) and a legitimate, penological goal. Deconstructed magazines and personal property "create[] clutter, which makes it more difficult to find contraband, including weapons, and further create a fire hazard." <u>Kunze v. Bertsch</u>, 477 F. Supp. 2d 1038, 1050 (D.N.D. 2007). Additionally, modifications to personal possessions can easily turn the innocuous into the dangerous; for example, removing wires or component parts of permitted electronic equipment can easily produce weapons.[15] As to written or drawn modifications, Plaintiff's own history illustrates a valid reason to prohibit such activity. As David Robinson stated, Plaintiff has "been known to draw recreations of his crimes in prison." (Aff. of David Robinson ¶ 4, July 10, 2017 [ECF No. 92-1].) Certainly there is a legitimate penological goal (both in the security of the facility and in the rehabilitation of certain classes of inmates) in monitoring and prohibiting inmates from recreating, by their own hand, violent or sadistic crimes.

As to the second factor, there is an alternative means of exercising the inmates' alleged right to alter of modify their property—seek permission. The regulation only applies to those alterations or modifications undertaken *without* permission, so if any inmate has a legitimate need or desire to modify or alter his property, he is free to seek permission and challenge an unreasonable denial.

Third, abandoning the regulation would require tremendous additional oversight, especially at lower-level facilities where inmates are allowed more personal property, to ensure the contraband or weapons have neither been brought in nor created.

_____

[15] Plaintiff himself points to headphones repaired with scotch tape and publications with missing pages. The former can be used as a weapon, while the latter could be used as accelerant. Together, the two could start a fire with minimal effort.

Finally, the court sees no "obvious, easy alternatives" to the challenged regulation, and Plaintiff has not offered any. Rather, the regulation includes a mechanism to seek exemption which, to the court, seems the most obvious and easy alternative to a blanket ban. Accordingly, the regulation is a valid exercise of the prison's authority to control its institution, and Defendants are entitled to summary judgment on that claim.

## VII.

The remaining claim is a due process challenge. Plaintiff argues that the actual notice of disapproved photographs and publications is too vague to constitute adequate notice. Publications received at a prison are checked against the PRC's Disapproved Publications List, which is available to inmates and staff. If the material is already on the list, staff sends a Notification of PRC Disapproval Form to the inmate instead of sending the already-disapproved publication. The Disapproval Form informs the inmate of the title, the author or issue number, the date of receipt, and a check mark next to the applicable criteria that OP 803.2 prohibits. Similarly, the Disapproval Form for a photograph informs the inmate the general reason for disapproval of the violation under the applicable criteria and who sent it. The inmate may appeal the disapproval through the Offender Grievance Procedure within seven days of the written notification of the decision.

If the publication is not already on the Disapproved Publications List, staff should forward "questionable material" to the three-member PRC.[16] PRC members review materials for compliance with OPs, and their majority vote determines whether something is approved or

---

[16] The only exception is for questionable issues of <u>Prison Legal News</u>, which are sent directly to the Chief of Corrections Operations.

disapproved.[17]  The PRC adds a disapproved publication's title to the Disapproved Publications List if any portion of it contains disapproved content.

Plaintiff complains that the Disapproval Form does not specifically describe the objectionable content, its location, or how the item is prohibited by OP 803.2.  Plaintiff believes that OP 803.2 should require staff to show the objectionable material to the inmate for the inmate's inspection if it would not be an "irrevocable threat" to penological goals.  Plaintiff explains he would trust staff more if he was allowed to inspect disapproved material.[18]

Plaintiff's position would essentially undue the applicable regulation.  If a publication sent to an inmate were withheld as violative of VDOC's policy on nudity, an inmate could merely "challenge" the finding and have the material turned over to him so that he could mount a defense.  At that point, the banned material would be in his or her hands, making the initial regulation and determination moot.  Doing so would open the floodgates to the harms VDOC's policy justifiably avoids,[19] and places inmates in charge.  While Plaintiff may not like the system, the prison must certainly be allowed to enforce a sound policy.  Otherwise, the exception would swallow the rule, making the entire review process an exercise in futility.  Defendants will be granted summary judgment on this claim as well.

## VIII.

For the foregoing reasons, I deny Plaintiff's motion for reconsideration, deny his request pursuant to Fed. R. Civ. P. 56(d), and grant Defendants' motion for summary judgment.  The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to Plaintiff and all counsel of record.

---

[17] However, the VDOC Director and the Chief of Corrections Operations may veto a PRC decision.

[18] Current policy does not authorize such an inspection.

[19] See supra pgs. 11–16.

ENTER: This __30th__ day of March, 2018.

 

                               _____ s/ Jackson L. Kiser _____

                               SENIOR UNITED STATES DISTRICT JUDGE